## Moorefield Unemployment Compensation Case.

Argued March 22, 1951. Before RHODES, P. J., HIRT, RENO, ROSS, ARNOLD and GUNTHER, JJ. (DITHRICH, J., absent).

*Curtis C. Carson, Jr.,* for appellant.

*William L. Hammond,* Special Deputy Attorney General, with him *Charles J. Margiotti,* Attorney General, and *Roland M. Morgan,* Associate Counsel, for appellee.

OPINION BY GUNTHER, J., July 19, 1951:

In this unemployment compensation case the claimant has appealed from the decision of the Unemployment Compensation Board of Review denying benefits. The Board concluded that claimant was disqualified for compensation under Section 402(e) of the Unemployment Compensation Law on the ground that her unemployment was due to her discharge for willful misconduct connected with her work.

Claimant had been employed in the house-cleaning department of the John Wanamaker store in Phila-

delphia. Her duties began at 5 p.m. and she worked until 1 a.m. the next morning. The employee's lunch hour began at 9 p.m. and it had become a common practice for the employees in this department to eat their lunch in the locker room located in the sub-basement of the store. Over a period of several months prior to March 3, 1950, the employer had noticed that quantities of food, none of which was accounted for, were disappearing from the food department. On the evening of March 2, 1950, the employer stationed detectives at various points in order to keep the store's pantry under constant surveillance. These men entered the locker room at about 9 p.m. and questioned the several employees about items of food which were on the table and being cooked on the stove. The employees were told to report at the office the following morning at 11 a.m. Claimant appeared at that time and after being interviewed was presented with a paper to sign which included a statement that claimant had taken food from the store pantry. Claimant refused to sign this statement, and the statement was then rewritten. Claimant signed this second statement which set forth that she had eaten foodstuffs which she knew had been taken from the pantry without having been paid for or charged to anyone's account; that claimant knew the merchandise had been stolen. Claimant was thereupon discharged. Claimant later contended that she signed this second statement under duress after her employer said she had to sign. There is, however, no testimony whatsoever disclosing what would have happened to the claimant if she had not signed. The employer, testifying through its agent, denied that any force or compulsion was exerted in order to get the claimant to sign this statement. Whether claimant signed under duress or compulsion was a question of fact for the Board which in turn depended upon the credibility of the witnesses. A most damaging state-

ment of the claimant seriously affecting her credibility is found in her application for benefits wherein she falsely gave as a reason for her unemployment the fact that she was "laid off—lack of work." In such circumstances, the credibility of the witnesses, the weight of their testimony, and the reasonable inferences to be drawn therefrom are for the Board. In this, the Board found adversely to the claimant. *Tronieri Unemployment Compensation Case*, 164 Pa. Superior Ct. 435, 437, 65 A. 2d 426.

Claimant in her signed statement admits that on various occasions over a period of months she participated in eating food which she knew had been stolen from her employer; that she knew she was doing wrong in partaking of that food. There is no evidence that she herself stole any of the food, yet the evidence clearly discloses that she was guilty of encouraging, aiding and abetting fellow-employees in perpetrating a continuing wrong against her employer. In the recent case of *Detterer Unemployment Compensation Case*, 168 Pa. Superior Ct. 291, 77 A. 2d 886, this Court had an opportunity to determine what constitutes willful misconduct as set forth in Section 402(e) of the Unemployment Compensation Law. This Court said: "American Jurisprudence defines 'Misconduct Precluding Payment of Unemployment Insurance' as follows: 'Misconduct within the meaning of an unemployment compensation act excluding from its benefits an employee discharged for misconduct must be an act of wanton or wilful disregard of the employer's interest, a deliberate violation of the employer's rules, *a disregard of standards of behavior which the employer has the right to expect of his employe,* or negligence in such degree or recurrence as to manifest culpability, wrongful intent, or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the em-

ployer.' (Emphasis added.) 48 Am. Jur. 541, 542, §38."
Cf. *Sabatelli Unemployment Compensation Case,* 168
Pa. Superior Ct. 85, 76 A. 2d 654.

That claimant's actions constituted misconduct is
clear beyond peradventure. Where, as here, there is
a continuing recurrence of such violations over a pe-
riod of time, claimant's actions clearly establish such
a deliberate and willful intent to disregard the rights
of the employer as to constitute willful misconduct
within the meaning of Section 402(e) of the Unem-
ployment Compensation Law.

The findings of the Board that claimant was guilty
of willful misconduct connected with her work are
amply supported by competent and credible evidence
and are binding on us. Section 510 of Unemployment
Compensation Law. The Board did not err in conclud-
ing that claimant was disqualified under Section
402(e).

Decision affirmed.