632 A.2d 622

**DEPARTMENT OF the NAVY, NAVAL AIR WARFARE
CENTER, AIRCRAFT DIVISION WARMINSTER,
Petitioner,**

v.

**UNEMPLOYMENT COMPENSATION BOARD
OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 15, 1993.

Decided Sept. 30, 1993.

606

Carolyn E. Riemer, for petitioner.

Clifford F. Blaze, Deputy Chief Counsel, for respondent.

Before COLINS and PELLEGRINI, JJ., and SILVESTRI, Senior Judge.

SILVESTRI, Senior Judge.

The Petitioner [1] appeals from the order of the Unemployment Compensation Board of Review (Board), dated August

---

1. Petitioner, at the time of the events giving rise to this proceeding, was known as the Naval Air Development Center (NADC); in January of

11, 1992, granting benefits to Ronald H. Beliveau (Beliveau). The referee had denied benefits to Beliveau by reason of his willful misconduct. The Board, although agreeing with the referee that Beliveau had committed willful misconduct, found and concluded that Beliveau established good cause for his actions. Since our review of the record establishes that the Board's decision has foundation neither in fact nor in law, we reverse the Board and deny benefits to Beliveau.

At the hearing before the referee, the Petitioner was represented by counsel and Beliveau appeared pro se. The Petitioner offered into evidence one exhibit, being number 4 consisting of thirty-three pages marked 4–1 through 33, to which Beliveau did not object, and was received into evidence. Beliveau did not call any witnesses, neither did he present any evidence; as appears hereinafter, he merely made statements as to why he felt his conduct did not constitute willful misconduct.

The Board did not take any additional testimony. From the record established before the referee, the following facts are not in dispute.

Beliveau, an electronic engineer, became a civilian employee of Petitioner at Warminster, Pennsylvania, in June of 1966, and was assigned to the Operation Analysis Branch, Warfare System Analysis Department, with top security clearance.[2]

At a time not appearing in the record, Beliveau, in an amended information, exhibit 4–16 through 17, captioned United States of America v. Ronald Beliveau, Criminal No. 1–223–01 in the United States District Court for the Eastern District of Pennsylvania (district court) was charged, as herein relevant, as follows:

2. At all times material to this information, Ronald Beliveau was charged in the course of his employment as an electronic engineer with the duty of preparing and sub-

1992, Petitioner's name was changed to Naval Air Warfare Center, Aircraft Division Warminster (NAWC).

**2.** His top secret security clearance was suspended on February 14, 1991 by reason of the events leading to the within proceeding.

mitting claims for reimbursement for expenditures on official government business.

3. From on or about 1987 to in or about September, 1990, in the Eastern District of Pennsylvania, the defendant Ronald Beliveau did present and cause to be presented to NADC false, fictitious and fraudulent claims, that is Travel Vouchers (Form DD 1351–2) and Claims For Reimbursement for Expenditures on Official Business (Form SF1164) purporting to entitle him to payments totaling approximately $30,000 for travel expenses defendant claimed to have incurred while working on official government business, well *knowing such claims to be false, fictitious and fraudulent* in that he did not incur those expenses on official government business during that period. (Emphasis added.)

In violation of Title 18, United States Code, Section 287.[3]

On May 14, 1991, Beliveau, being represented by counsel, Jean Green, Esq., entered into a plea agreement,[4] exhibit 4–9 through 15, with the United States Attorney for the Eastern District of Pennsylvania subject however to approval by the district court. The plea agreement, as herein relevant, specifically provided as follows:

1. The defendant agrees to plead guilty to a criminal information charging him with one count of making fraudulent claims against the government, in violation of 18 U.S.C. § 287, arising from his scheme to defraud the government by making and submitting fraudulent travel

---

3. Title 18 of the United States Code, Section 287, 18 U.S.C. § 287, provides:

§ 287. False, fictitious or fraudulent claims
Whoever makes or presents to any person or officer in the civil, military, or naval service of the United States, or to any department or agency thereof, any claim upon or against the United States, or any department or agency thereof, knowing such claim to be false, fictitious, or fraudulent, shall be imprisoned not more than five years and shall be subject to a fine in the amount provided in this title.

4. The plea agreement was entered into pursuant to and in compliance with Rule 11 of the Federal Rules of Criminal Procedure, Fed.R.Crim.P. 11.

vouchers while working at the Naval Air Development Center in Warminster, Pennsylvania from 1987 until 1991.

. . . .

9. In exchange for the defendant's plea of guilty to the one count of the criminal information to be filed, the United States agrees that it will make no recommendation as to the specific sentence that should be imposed within the applicable Sentencing Guidelines range. The United States further reserves the right to comment on the facts of the case, and correct any factual misrepresentations or misstatements made by the defendant.

. . . .

12 The defendant has had explained to him by his counsel, and acknowledges his understanding of, the following: a) the nature of the charges to which the defendant is pleading guilty in one count of the information;

. . . .

c) the defendant has the right to plead not guilty and to persist in that plea of not guilty;

. . . .

j) by pleading guilty, the defendant is waiving all rights to appeal except the right to appeal the legality of the sentence, a violation of a plea agreement, or a defect in the change of plea proceedings.

13. The defendant expressly informs the Court that this plea of guilty is completely voluntary on his part, and that it is not the result of any force or promise from anyone, apart from the plea agreement of which the court is being informed. No one has promised or guaranteed the defendant what sentence the Court will impose, and the defendant understands that the Court can and might impose the maximum sentence provided by law.

14. The defendant is pleading guilty because he is guilty of the offense to be charged in the one count criminal information.

15. The defendant understands that the court will place the defendant under oath and ask certain questions to

which the defendant must respond truthfully. If the defendant answers questions under oath, on the record, and in the presence of his lawyer, his answers may later be used against him in a prosecution for perjury or making false statements.

. . . .

The plea agreement was signed by Beliveau, his attorney, and the United States Attorney.

The factual basis for the plea agreement is contained in exhibit 4–3 through 7, being the Government's Guilty Plea Memorandum dated June 21, 1991, filed in the district court and a copy served on Beliveau's counsel, and states as follows:

In 1987, Beliveau began submitting fraudulent travel vouchers and claims at NADC. These were for trips to various locations throughout the continental United States, including California, Dallas, Fort Worth, Chicago and Washington, D.C. He started out slowly—when traveling on official government business he stayed an extra day after his business had concluded and charged the government for the expenses for the extra day. Also, when meetings ended early or were cancelled, Beliveau did not return to work but stayed the extra time and again charged the government. Later, the number of days of non-work increased and eventually he took trips in which no official work was performed. Beliveau was able to do this without detection because travel orders were issued thirty days in advance of his planned travel. Also, because Beliveau worked on programs which were top secret, his travel orders only specified general geographic destinations and not specific locations.

Beliveau has admitted to defrauding the government of approximately $30,000. Had this matter proceeded to trial, the government would prove the offense through the testimony of Richard Brookes, Beliveau's work associate at NADC. Beliveau admitted to Brookes in February, 1991 that he (Beliveau) knew he was being investigated, that he had submitted fraudulent travel claims and that he had done this since at least 1987. Ronald Kabin, Command Evalua-

tion Program Officer at NADC, would also testify that Beliveau made similar admissions to him in February 1991.

Finally, the government would introduce the liquidated Travel Vouchers (Form DD 1351-2) and Claims for Reimbursement For Expenditures on Official Business (Standard Form 1164). These vouchers and claims were signed and submitted by Beliveau to NADC from 1987 through September, 1990. Reimbursement checks issued to and cashed by Beliveau would be introduced as well. To prove that these vouchers and claims were false, the government would introduce NADC sign in sheets to show that Beliveau was at work at NADC on certain dates when he claimed to be traveling. Also, the government would introduce trip reports prepared by Beliveau, visitor logs and testimony to show that these trips were either cancelled or never had taken place.

On January 6, 1992, Beliveau appeared in the district court with counsel and formally entered his guilty plea consistent with his plea agreement of May 14, 1991 and the guilty plea memorandum of June 21, 1991, to violating 18 U.S.C. § 287 as charged in the amended information. The district court imposed a sentence of probation for a period of three (3) years, ordered restitution of $30,000.00 and imposed fines totaling $5,979.76.[5]

Betty E. Lawrence, a labor relations specialist, was called as a witness for the Petitioner; her testimony was a brief summary of what was contained in exhibit 4-1 through 33 which had been admitted into evidence.

The referee then made an effort to have Beliveau present evidence in support of his claim, as follows:

5. During the pendency of the criminal proceeding against Beliveau, but prior to sentencing, the Petitioner, after notice and hearing, terminated Beliveau's employment, effective October 18, 1991, by reason of filing false claims against the government, exhibit 4-18 through 26. Beliveau appealed his termination of employment to the Merit Systems Protection Board (MSPB) which on April 8, 1992 affirmed the Petitioner's determination. At the hearing before the Petitioner and also on appeal to the MSPB, Beliveau admitted to filing of false claims as charged in the criminal information against him but took the position that termination of his employment was too severe a penalty for his conduct.

R   Do you have comments on what I don't have and you want to add to your ...

C   Okay, I guess we ought to clarify why we're here. I think the, you know, the issue in the appeal here is whether it was a willful misconduct. I am not denying the, the fact this, this misconduct occurred, but I'm saying it was not willful. I've suffered from an obsessive-compulsive disorder for a long time. I have an obsessive-compulsive personality which tends to predispose me to acting in certain ways under stress. That has been basically the diagnosis of three different physicians in detailed psychological testing. So, I think that's the main issue. The question is whether it was willful misconduct or not.

R   Why don't you just—so we have a full record—when were you first treated for this personality disorder? Or, how long have you been ...

C   Since February of '91.[6]

R   February of '91?

C   '91.

R   And you're still being treated?

C   And I still am, yes. Dr. Mark Greenburg [sic] is my physician [7] and I go to him on a weekly basis.

. . . .

R   Maybe I'll do it this way then, just so I have an idea of what occurred. Prior to getting—facing these charges that were being levied against you, did you ever inform the employer that there was any type of medical problem that was affecting your work?

C   I didn't realize that this obsessive-compulsive behavior really taken over my life. I was just engaging in this

6.  Beliveau presented false travel vouchers from 1987 through September of 1990.

7.  It is not disputed that Dr. Greenberg is a psychologist, not a physician.

behavior. I was under a lot of stress.[8] I was feeling very depressed. I had job stress from the jobs I was working on, and this was going on for a number of years. I began basically trying—instead of facing up to things, instead of discussing the problems, I tried to escape, I was just—my—I'm, I'm not an assertive person. I didn't know how to deal with the situation, and I was attempting to escape from the situation. That was my way of dealing with it. Some people turn to drugs or alcohol or whatever and I just, I just tried to escape by taking these trips [9] to get away from things.

. . . .

R   Anything else?

C   And—no, *I just feel that the conduct basically was as I say, it was misconduct. I'm not denying that I did it; I just feel it was not willful.* I was in the throes of this mental illness and it just—it's like—I guess if I'd have been an alcoholic or been using drugs it might have been a similar thing; except, in that case, you know, I would have been given treatment for the alcoholism and the drugs and it was, you know, the reaction would have been considered somewhat less willful. I just. . . . (Emphasis added.)

R.R. 90a–93a.

At the conclusion of the testimony, both the Petitioner, by its attorney, and Beliveau made statements as follows:

EL   Just in a minute, I think we—the Navy would agree that Mr. Beliveau was a good employee, and he had many fine years of service with us. But—and yet, we'd also agree that he's suffering from some emotional problems, and it appears they played some part in his misconduct. But, you know, was it enough to, to render this other than willful. We don't think so. And, I just point to two things, number one he was guilty, he was found guilty and

8.   Beliveau presented no testimony of the circumstances of his work which created stress.

9.   It is undisputed that Beliveau submitted false and fraudulent vouchers and obtained reimbursement for alleged trips he did not go on.

pleaded guilty to the crime so the emotional problems weren't sufficient to render him not guilty, and moreover, his removal was sustained by the Merit System Protection Board and, you know, you'll see portions of that transcript where his doctors testify. This was brought up at the hearing and yet the Merit System Protection Board agreed with the agency that it, it was appropriate to remove Mr. Beliveau. So, we feel he was properly discharged and it was for misconduct.

R  Anything else?

C  May I make a reply?

R  Yes.

C  Number one, *the question that came before the Merit System Protection Board was the issue of the penalty imposed. Was the penalty, in fact, too severe for that kind of misconduct.* It was not a question of whether the misconduct was willful or not. I mean, if, in fact, NADC in all its documents says I knew right from wrong; well, that's a question of sanity or insanity. If I had not known right from wrong then I would have plead not guilty in Court by reason of insanity, basically. There's a legal case, I guess it's called the Mcnaghten[sic]. (Emphasis added.)

R.R. 97a.

The referee filed his decision on June 17, 1992 in which he made the following findings of fact:

1.  For purpose of this appeal, the claimant was employed by the Naval Air Warfare Center as an Electronics Engineer at $26.65 an hour. Claimant worked for this employer from June 1966 to October 18, 1991.

2.  Claimant was discharged from the Naval Air Warfare Center for filing false claims against the United States Government. Over a six year period,[10] the claimant submitted fraudulent travel vouchers to the employer and

10.  It is undisputed that the false claims were made between 1987 and September of 1990.

obtained reimbursement for expenses of approximately $30,000, to which he was not entitled.

3. In June 1991, the claimant pled guilty in U.S. Federal District Court, to make [sic] false claims against the United States Government, in the form of submitting requests for travel expenses to which he was not entitled.

4. Claimant is able and available for work.

5. The claimant has failed to establish good cause for his action.

The referee denied benefits to Beliveau reasoning, as herein relevant, as follows:

Claimant's action, in filing false claims against the United States Government, in order to receive reimbursements for travel expenses to which he was not entitled, was in disregard of the employer's best interests and his discharge was the natural result. Furthermore, while the claimant may have been undergoing an emotional disorder, he did not seek treatment for his medical problem until he learned of the charges levied against him by the Naval Air Warfare Center.

Beliveau appealed the referee's decision to the Board on July 2, 1992 *only as to referee's finding of fact No. 5* by stating:

I am appealing the decision of Referee Joseph T. Garvey, dated June 17, 1992. I do not disagree with findings of facts numbered 1 through 4. I do disagree with fact number 5. I feel that I have established good cause for my actions. Section 402(e) of the Law as stated by Referee Garvey deals with *willful* misconduct; therefore, I assume that if my misconduct was not willful, I would be eligible for unemployment compensation. Referee Garvey did not address the issue of whether or not my misconduct was willful. I feel that the issue to be resolved in this appeal is not the question of the seriousness of the misconduct, but whether it was willful.

R.R. 101a. (Emphasis in original.)

The Board, in reversing the referee and granting benefits to Beliveau, made the following finding of facts:

1. Claimant was last employed as an Electronics Engineer by the Naval Air Warfare Center from June, 1966 at a final rate of $26.65/hour and his last day of work was October 18, 1991.

2. Claimant was discharged from the Naval Air Warfare Center for filing fraudulent travel vouchers against the employer.

3. The fraudulent travel vouchers totalled over $30,000 over several years.

4. Claimant violated a reasonable rule of the employer's against submitting fraudulent travel vouchers.

5. Claimant was suffering from a personality disorder at that time which impaired his judgment and influenced his behavior.

6. Claimant did not intentionally violate any employer rules.

In granting benefits to Beliveau, the Board reasoned as follows:

The burden of proof in Section 402(e) cases is originally on the employer to show claimant violated an employer rule. The burden then shifts to the claimant to show good cause. In this case, the Board finds that the employer has met its burden by showing that claimant submitted fraudulent travel vouchers to the employer which is against the employer's rules. By satisfying its burden of proof, the employer has shifted the burden to the claimant to show good cause for his violations. The Board finds in this case, that the claimant has satisfied his burden as well. The Board finds credible the claimant's testimony that he was suffering from a personality disorder at the time of his rule violations and that this disorder impaired his judgment and effected his behavior.

Since claimant has established good cause for his actions, he cannot be denied benefits under Section 402(e) of the Law.

The Board made the following Conclusion of Law:

*CONCLUSION OF LAW:* The claimant is not disqualified from receiving benefits under the provisions of Section 402(e) of the Pennsylvania Unemployment Compensation Law.

The Unemployment Compensation Law (Law), section 402(e) [11] provides that an employee shall be ineligible for compensation for any week in which his unemployment is due to his discharge from work for willful misconduct connected with his work.

The Law does not define willful misconduct; however, our Supreme Court in *Frumento v. Unemployment Compensation Board of Review,* 466 Pa. 81, 351 A.2d 631 (1976) adopted the definition of "willful misconduct", as defined by the Superior Court, in *Moyer Unemployment Compensation Case,* 177 Pa.Superior Ct. 72, 110 A.2d 753 (1955), to "comprehend an act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has a right to expect of an employee, or negligence indicating an intentional disregard of the employer's interest or of the employe's duties and obligation to the employer."

It is noted that the foregoing definition encompasses four (4) areas of behavior. In *Frumento,* the Supreme Court, recognizing the legislative policy sought to be achieved by the Law and the definition of willful misconduct developed by the Superior Court, stated:

Thus, not only must we look to the employee's reason for non-compliance we must also evaluate the reasonableness of the request in light of all of the circumstances. To accommodate this end, the Superior Court developed a concept of good cause. *Crib Diaper Service v. Unemployment Compensation Board of Review,* 174 Pa.Super. 71, 98 A.2d 490 (1953); see also *Krawczyk v. Unemployment Compensation Board of Review,* 175 Pa.Super. 361, 104 A.2d 338 (1954). The rationale upon which this concept of good cause was

11. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended,* 43 P.S. § 802(e).

developed was that where the action of the employee is justifiable or reasonable under the circumstances it cannot be considered wilful misconduct since it can not properly be charged as a wilful disregard of the employer's intents or rules or the standard of conduct the employer has a right to expect. *Crib Diaper Service v. Unemployment Compensation Board of Review,* supra. We find this reasoning persuasive.[12].

466 Pa. at 87, 351 A.2d at 634.

The "good cause" concept was further explicated by the Supreme Court in *McLean v. Unemployment Compensation Board of Review,* 476 Pa. 617, 383 A.2d 533 (1978), wherein it said:

> The employee's behavior cannot fall within "wilful misconduct" if it was justifiable or reasonable under the circumstances, since it cannot then be considered to be in wilful disregard of conduct the employer "has a right to expect." In other words, if there was "good cause" for the employee's action, it cannot be charged as wilful misconduct. (Citations omitted.)

476 Pa. at 620, 383 A.2d at 535.

■ Our scope of review in an appeal from a decision and order of the Board is such that we must affirm unless the Board's decision violates the constitutional rights of the appellant, the Board's determination is contrary to law, there is a violation of the Board's procedure, or a finding of fact necessary to the decision is not supported by substantial evidence. *Myers v. Unemployment Compensation Board of Review,* 533 Pa. 373, 625 A.2d 622 (1993). The record herein demonstrates that the Board's decision and order is not only contrary to law but is not supported by substantial evidence.

12. We note that the good cause rationale only applies to "disregard of employer's interest, a violation of employer's rules and disregard of standard of conduct the employer has a right to expect." The good cause rationale does not apply to an employee's negligence as defined. See *Myers v. Unemployment Compensation Board of Review,* 533 Pa. 373, 625 A.2d 622 (1993).

■ The Board committed an error of law in determining that Beliveau had good cause for filing false, fictitious and fraudulent travel vouchers to the government in violation of Title 18 U.S.C. § 287. Not only does the record herein establish beyond peradventure that Beliveau admitted to having filed fraudulent travel vouchers and received reimbursement therefor but he voluntarily pled guilty to violating Title 18 U.S.C. § 287, which makes such conduct a federal crime.

We, and the Superior Court, have held that theft from an employer is a wrongful act disqualifying the employee from receiving benefits under section 402(e) of the Law. *Spencer v. Unemployment Compensation Board of Review,* 145 Pa.Commonwealth Ct. 134, 602 A.2d 484 (1992), (claimant was mistakenly overpaid an amount in excess of what he had in an employer operated savings plan and refused to return the excess to employer, which constituted willful misconduct rendering him ineligible for benefits); *Pederson v. Unemployment Compensation Board of Review,* 74 Pa.Commonwealth Ct. 130, 459 A.2d 869 (1983), (claimant was a supervisory employee with a school district and engaged in unauthorized use of a school district vehicle, and had stolen personal property belonging to the school district which is willful misconduct resulting in the denial of benefits); *Harmon v. Unemployment Compensation Board of Review,* 66 Pa.Commonwealth Ct. 320, 444 A.2d 806 (1982), (claimant had employer's credit card to purchase gasoline for employer's vehicles; claimant used credit card on one occasion for purchasing gasoline for his personal car without the knowledge or permission of employer constituting willful misconduct, thus ineligible for benefits pursuant to section 402(e)); *Abbey v. Unemployment Compensation Board of Review,* 50 Pa.Commonwealth Ct. 323, 413 A.2d 3 (1980), (claimant worked for the Department of Public Welfare (DPW), simultaneously she was receiving assistance from DPW; claimant accomplished this "feat" by lying to her general assistance caseworker about her employment status; claimant was discharged for willful misconduct and benefits denied under section 402(e)); *Washington v. Unemployment Compensation Board of Review,* 25 Pa.Commonwealth Ct. 152, 358 A.2d 767 (1976), (claimant

collected coins from public phones for Bell Telephone Company and admitted to stealing some of the money from the collections; benefits were denied because of a discharge for willful misconduct under section 402(e)); *Unemployment Compensation Board of Review v. Houp,* 20 Pa.Commonwealth Ct. 111, 340 A.2d 588 (1975), (claimant discharged for stealing clothing and other merchandise from the employer's premises; such theft invokes section 402(e) resulting in denial of benefits); *Wilsey v. Unemployment Compensation Board of Review,* 169 Pa.Superior Ct. 368, 82 A.2d 503 (1951), (employee taking a piece of sheet steel of negligible value without permission constitutes willful misconduct within the meaning of the statute); *Moorefield v. Unemployment Compensation Board of Review,* 169 Pa.Superior Ct. 481, 82 A.2d 501 (1951), (claimant had eaten foodstuffs which she knew had been taken from the department store pantry without having been paid for and knowing that the same had been stolen, thus aiding and abetting fellow employees in perpetrating a continuing wrong against the employer; claimant's action constituted willful misconduct disqualifying her under section 402(e)).

The foregoing cases involved theft, in various scenarios, from the employer, which this Court has held was conduct in disregard of the employer's interest as well as a disregard of standards of behavior which the employer has a right to expect of an employee. Significantly, in none of the foregoing cases was the theft established by way of a conviction in the criminal division of our common pleas court or in the United States district court, but instead was established by substantial evidence in the hearing before the referee; also of significance, in none of the foregoing cases was it raised or suggested that there can be or there was good cause for the action of the employee which was justifiable or reasonable under the circumstances.

We believe, and so hold, that where the employer sustains its burden of proof with substantial evidence that the employee engaged in theft, directly or indirectly, of the employer's property, such conduct constitutes willful misconduct as a matter of law and is not subject to the rationale of good

cause as adopted in *Frumento* and further explained in *Mc-Lean.* We further hold that, where the employee's conduct in the defalcation of the employer's property constitutes criminal conduct and the employee is convicted of such defalcation by way of a guilty plea, such conviction is conclusive [13] of the defalcation, and proof of the conviction in an unemployment compensation proceeding, renders the defalcation willful misconduct as a matter of law foreclosing eligibility for benefits under section 402(e).[14]

Having determined that the Board erred in not giving conclusive effect to Beliveau's plea of guilty to violating Title

**13.** It is now firmly established by our Supreme Court that where a person is convicted of a crime after a trial, either by a jury or a judge, or pleads guilty thereto, either in our courts or in the federal courts, that the introduction of the record of the criminal conviction in a civil action involving substantially the same facts and issues as determined in the criminal proceeding, the guilty person in the civil action is conclusively bound by the fact of guilt. A person determined to be guilty of a crime following a trial or a plea of guilty cannot be heard to deny in a civil action that which was established in his prior determination of guilt without proof that his guilt was procured by fraud, perjury or some manner of error sufficient to set aside his determination of guilt. *See Folino v. Young,* 523 Pa. 532, 568 A.2d 171 (1990); *Department of Transportation v. Mitchell,* 517 Pa. 203, 535 A.2d 581 (1987); *Hurtt v. Stirone,* 416 Pa. 493, 206 A.2d 624 (1965); *Pennsylvania Turnpike Commission v. United States Fidelity and Guaranty Company,* 412 Pa. 222, 194 A.2d 423 (1963). *See also* Section 3 of the Law, 43 P.S. § 752, relating to denial of benefits on grounds that employee became unemployed through his own fault, i.e., criminal conviction; *Wilson v. Unemployment Compensation Board of Review,* 58 Pa.Commonwealth Ct. 531, 428 A.2d 288 (1981); *Adams v. Unemployment Compensation Board of Review,* 40 Pa.Commonwealth Ct. 486, 397 A.2d 861 (1979); *Unemployment Compensation Board of Review v. Ostrander,* 21 Pa.Commonwealth Ct. 583, 347 A.2d 351 (1975).

**14.** The Supreme Court in *Hurtt,* in relation to Stirone's criminal trial, stated the "defendant was presented with more than ample opportunity to overcome the charges lodged against him while he was swathed in the cloak of presumed innocence.... To now hold that the effect of those jury determinations is *nil* not only would be to fly in the face of reason but also would be a general indictment of the whole American jury system." 416 Pa. at 498, 206 A.2d at 626. Here we have a plea of guilty to the charges by Beliveau; to render his judicial admission of theft from his employer a nullity would not only indict our system of justice, but would give credence to Mr. Bumble's statement in Charles Dickens' "Oliver Twist" Chapter LI, (1837–1838) that, "If the law supposes that, the law is a ass—a idiot. If that's the eye of the law, the

18 U.S.C. § 287, after it found as a fact, in finding of fact 2, "[c]laimant was discharged from the Naval Air Warfare Center for filing fraudulent travel vouchers against the employer" and collected approximately $30,000 as a result of such fraudulent travel vouchers (finding of fact 3); and not concluding that Beliveau was ineligible to receive benefits as a matter of law, our disposition would ordinarily end here. However, since the Board's decision is blatantly insupportable on the record, is in direct violation of the teaching of *Treon v. Unemployment Compensation Board of Review*, 499 Pa. 455, 453 A.2d 960 (1982), and an abuse of the Board's authority to determine credibility issues, we are compelled to address the manifest errors of the Board's decision.

█ The Board's duty is to examine the evidence, to make findings of fact based upon the evidence, and to arrive at conclusions based upon those facts. Thus, the Board may not decide what conclusion it wishes to reach and then formulate a set of facts which will justify those conclusions. *Treon*, 499 Pa. at 461 n. 2, 453 A.2d at 963 n. 2.

█ The Board made finding of fact 4 that "[c]laimant violated a reasonable rule of the employer's against submitting travel vouchers." Nowhere in the record is there set forth a "rule of the employer against submitting fraudulent travel vouchers" and the Board does not cite to the record before the referee such a rule.[15] Neither does the Board inform as to the

law is a bachelor; and the worst I wish the law is, that his eye may be opened by experience—by experience."

15. The statute, 18 U.S.C. § 287, is not a rule promulgated by the Petitioner-employer. Beliveau was a civilian employee with the Department of the Navy assigned to the NADC. Section 287 of Title 18 was neither promulgated by the Department of the Navy nor the NADC; rather, it was enacted by the United States Congress as part of the crimes code of the United States, as last amended on October 27, 1986.

Section 287 is titled "[f]alse, fictitious or fraudulent claims" and specifically states, "[w]hoever makes or presents ... any claim ... knowing such claim to be false, fictitious or fraudulent...." 18 U.S.C. § 287.

"Whoever" is not defined in Title 18. However, "[w]hoever" is defined in Webster's Third New International Dictionary 2611 (15th ed.

terms of the rule or how and when Beliveau was made aware of such rule.

Clearly the Board's finding of fact 4 is not only not supported by substantial evidence, but there is no evidence of an employer rule in the record and, obviously, cannot serve as a basis for the Board's decision by concluding that "the Board finds that the employer has met its burden by showing that claimant submitted fraudulent travel vouchers to the employer which is against the employer's rules.[16] By satisfying its burden of proof, the employer has shifted the burden to the claimant to show good cause for his violations."

Not only did the Board err by concluding that such a shift in burden occurred, the Board then compounded the error by concluding that Beliveau satisfied his burden. The Board found credible Beliveau's testimony that he was suffering from a personality disorder at the time of the alleged rule violations and that this disorder impaired his judgment and effected his behavior. The Board also found that Beliveau did not intentionally violate any employer rule. The Board thereafter concluded that Beliveau had established good cause for his actions and therefore cannot be denied benefits under Section 402(e) of the Law.

The Board erred in relying on the testimony of Beliveau regarding the possible effects of his personality disorder on his judgment and behavior. Beliveau was not competent to offer an opinion in this regard since there is nothing in the record that he possessed sufficient skill, knowl-

1966) as "whatever person: any person at all that: no matter who—." Thus, Section 287 is applicable to *all* persons, natural and legal.

Section 287 of Title 18 is a penal statute of general application to any and all persons and is not an "employer rule" promulgated by and applicable only to the Department of the Navy. Furthermore, neither Beliveau nor NAWC set forth before the referee any "employer rule", neither did either of them contend before the referee that 18 U.S.C. § 287 is an employer rule of the Petitioner.

16. There is no prerequisite that certain employee conduct be proscribed by a rule before a finding of willful misconduct may occur. *See Harmon v. Unemployment Compensation Board of Review*, 66 Pa.Commonwealth Ct. 320, 444 A.2d 806 (1982) (no employer rule that employer property may not be converted to employee use is required.)

edge or expertise in the field of mental disorders. *See Brady v. Unemployment Compensation Board of Review,* 115 Pa.Commonwealth Ct. 221, 539 A.2d 936 (1988) (expert testimony required to establish that mental disorder constituted good cause for actions). There is no evidence in the record before the referee by competent medical personnel that Beliveau's personality disorder influenced his behavior or impaired his judgment. To the contrary, there is evidence of record that Beliveau demonstrates proper judgment of the difference between right and wrong. Exhibit 4–27. Where one knows the difference between right and wrong and chooses to do wrong, i.e., steal from his employer, rather than right, such choice is neither justification nor reasonable under the circumstances and cannot be construed as constituting good cause.

Accordingly, we reverse the order of the Board and deny Beliveau's claim for benefits.

## ORDER

AND NOW, this 30th day of September, 1993, the order of the Unemployment Compensation Board of Review is reversed and benefits to Ronald H. Beliveau are denied.