588 A.2d 1341

**David J. ALEXANDER, Petitioner,**

**v.**

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 22, 1991.

Decided April 2, 1991.

Michael A. Murphy, Pittsburgh, for petitioner.

Amy S. Cunningham, Sable, Makoroff, Sherman & Gusky, Pittsburgh, for respondent/intervenor Executive Motors.

Before PALLADINO and BYER, JJ., and BARBIERI, Senior Judge.

BARBIERI, Senior Judge.

David J. Alexander (claimant) seeks review of an order of the Unemployment Compensation Board of Review (board) finding him ineligible for unemployment compensation benefits pursuant to Section 402(e) of the Unemployment Compensation Law (Law), Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e).[1] We will affirm.

Two issues are presented for review: (1) whether the board's decision was supported by substantial evidence and (2) whether the board erred as a matter of law in determining that claimant's conduct rose to the level of willful misconduct. Our scope of review, of course, requires us to affirm the board's decision unless we find a necessary finding of fact unsupported by substantial evidence of record, an error of law or a violation of the petitioning party's constitutional rights. *Kirkwood v. Unemployment*

---

1. This section disallows benefits for any week in which an employee's unemployment is due to his or her discharge or temporary suspension from work for willful misconduct connected with that work.

*Compensation Board of Review,* 106 Pa.Commonwealth Ct. 92, 525 A.2d 841 (1987).

The board resolved testimonial conflicts in favor of claimant's employer, Executive Motors,[2] and found that:

1. The claimant was last employed by Executive Motors as an electric sun roof installer, his final rate of pay was $9.25 per hour, he worked full-time from April, 1984 with his last day of work being on December 3, 1989.

2. The employer has a business of customizing and restyling automobiles, and the parts removed for this customizing were resold.

3. The parts were resold to insurance companies and salvage companies with one of those salvage companies being The Cadillac Store.

4. Six or seven months prior to the claimant's last day of work, the employer was experiencing inventory loss, specifically gold emblems and chrome grills.

5. On or about November 22, 1989, the claimant saw the owner of The Cadillac Store in a local tavern, approached the owner, and offered to sell him certain items from the stock of Executive Motors and that the profit be split 50 percent.

6. The claimant was aware that The Cadillac Store owner did business with his last employer but was not completely familiar with the extent of the business or the length of time.

7. The owner of The Cadillac Store, being a businessman himself, later advised the vice-president of the claimant's last employer of the claimant's proposition to sell some of their inventory at a profit.

8. The vice-president initially suspended the claimant and then later advised the claimant that he was discharged because he had offered to sell his inventory to the owner of The Cadillac Store.

Findings of Fact Nos. 1–8. Based on these findings, the board concluded that "the claimant's conduct in offering to

---

**2.** Paragraph 2 of the board's discussion.

sell certain items from his employer's inventory rose to the level of willful misconduct within the provisions of Section 402(e) of the Law." Paragraph 4 of the board's discussion.

Willful misconduct has been defined as conduct evidencing (1) wanton and willful disregard of an employer's interests, (2) a deliberate violation of an employer's rules, (3) a disregard of standards of behavior which an employer may rightfully expect from an employee, or (4) negligence which manifests culpability, wrongful intent, evil design, or intentional and substantial disregard for an employer's interests or an employee's duties and obligations. *McLean v. Unemployment Compensation Board of Review*, 476 Pa. 617, 383 A.2d 533 (1978). Whether an employee's conduct rises to the level of willful misconduct is a question of law and, as such, subject to our review. *Id.*

Having carefully reviewed the record, we find the board's findings supported by substantial evidence and the conclusion based thereon correct as a matter of law. Included in the record is an "affidavit statement" given by Dewey D. Spittler, Jr., the owner of The Cadillac Store. Therein, Mr. Spittler states:

> On November 22, 1989 or thereabout David Alexander approached me in the evening while we were at Willy's Tavern. At that time, he offered to sell me anything I wanted or needed out the back door of Executive Motors.

C.R., Item No. 3, EX-5. Moreover, Mr. Spittler also offered the following testimony concerning the November 1989 conversation with claimant:

> I was at Willy's Tavern ... and Mr. Alexander approached me just talking and asked me if I ever had the need for chrome gold kits for cars, Cadillacs in specific or grills that they take off of cars and I told him that the gold kits were available to me.... but I could not purchase them to sell as the cost was too much.
>
> * * * * * *
>
> Mr. Alexander offered to make these parts available to me and if I wanted that to be so that he would get them

and if I sold them that I could give him the half the profits [sic] or half the money for what I sold.

N.T., pp. 15–16. Mr. Spittler further testified that he was advised by claimant that claimant intended to get the gold kits and grills at his place of employment, Executive Motors, and that he never dealt with claimant directly when he was arranging to purchase items from Executive Motors. *Id.*

Additional testimony elicited from Mr. Spittler indicates that he reported the November 1989 conversation with claimant to claimant's employer because he "felt that it wasn't proper being a business owner [himself] that one of the employees should be stealing or in the intent to off their employer." N.T., p. 16. On cross examination when asked whether he knew of anyone who could verify the November 1989 conversation with claimant, Mr. Spittler responded:

... His [claimant's] wife was there and she said during the conversation, she did come up while we were talking and said directly to—to him that—that he couldn't—that he wasn't a thief. 'You can't do that, Dave, you're not a thief.'

N.T., p. 19.

The record also contains the testimony of the Vice President of Executive Motors, David Bosiljevac, who testified that he spoke to claimant after talking to Mr. Spittler. N.T., pp. 20–21. According to Mr. Bosiljevac, claimant admitted both that he had conversed with Mr. Spittler and that he intended to steal from Executive Motors and make a deal with Mr. Spittler. N.T., p. 23.

This evidence, in our opinion, supports a finding of willful misconduct. It clearly establishes a course of conduct by claimant reflecting a wanton and willful disregard of his employer's interests as well as a disregard of standards of behavior which his employer could properly expect from him. Accordingly, we will affirm the order of the board.

652 

## ORDER

AND NOW, this 2nd day of April, 1991, the order of the Unemployment Compensation Board of Review, No. B–284951, dated September 28, 1990, is affirmed.