**Allan JORDON, Petitioner,**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted June 14, 1996.
Decided Nov. 6, 1996.

---

Robert J. Abraham, for petitioner.

Sarah C. Yerger, Assistant Counsel, and Clifford F. Blaze, Deputy Chief Counsel, for Respondent.

Before McGINLEY and FRIEDMAN, JJ., and KELTON, Senior Judge.

KELTON, Senior Judge.

Claimant Allan Jordon petitions for review of the January 25, 1996 order of the Unemployment Compensation Board of Review denying him unemployment compensation benefits under Section 402(e) of the Unemployment Compensation Law (the Law)[1] and reversing the Referee's grant of benefits. We affirm the denial of benefits.

■ The facts as found by the Board are as follows.[2]

1. Claimant was last employed as a custodian by Mars School District since 1989 at a final rate of $7.15 hourly and his last day of work was July 14, 1995.

2. [C]laimant suffered a head injury when he was 18 years old and has since been affected by a life long mood disorder marked by physical imbalance, depression and emotional outbursts.

3. The employer accepted the claimant's disabilities and in fact facilitated his employment by providing the additional supervision and direction the claimant regularly needed to stay on track with his duties.

4. The relationship worked well until the claimant took an unscheduled vacation on July 5, July 6, and July 7, 1995.

5. The employer discussed this with the claimant upon his return to work on July 10, 1995 stressing the need to be advised of his attendance, and the claimant agreed with the employer's concerns.

6. The claimant missed work again on July 17, and July 18, 1995 and contacted the employer about this the evening of July 18, 1995, from a pay phone, since at that time the claimant did not have his own telephone.

7. Employer informed claimant that his absenteeism was a disciplinary problem and claimant was on notice that employer would take disciplinary action. Employer then stressed that claimant should report to work on July 19, 1995.

8. The claimant agreed to do this, but did not report to work until July 20, 1995, believing he had been told to report to work in order to be fired.

9. Had the claimant reported on July 19, 1995 the employer would have over looked [sic] his absenteeism up to that point, but since he failed to report that day, the employer suspended the claimant for three days for missing work on July 17, 1995, five days for missing work on July 18, 1995 and indefinitely, pending discharge, for missing work on July 19, 1995.

10. [C]laimant was advised of this upon reporting to work on July 20, 1995.

11. Claimant's reason for not attending work on all of the days in question was that he was in a "mood" and simply could not get out of bed.

(Board's Findings of Fact Nos. 1–11.)

Although the Board did not specifically state that Claimant failed to establish good cause for his behavior, it concluded that his disorder did not negate the deleterious nature of his actions:

Claimant's actions, regardless of his disability, were inimical to employer's best interests and a disregard of the standards of behavior that an employer has a right to expect of its employees, with or without disabilities.

(Board's Decision at 2.)

■ The employer bears the burden of proving willful misconduct. *County of Lu-*

---

1. Section 402(e) of the Act provides that "[a]n employe shall be ineligible for compensation for any week ... [i]n which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work...." Act of December 5, 1936, Second E. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. § 802(e).

2. Section 504 of the Law provides that the Board may reverse the determination of a referee without taking any new evidence. 43 P.S. § 824; *Peak v. Unemployment Compensation Board of Review,* 509 Pa. 267, 501 A.2d 1383 (1985). The Board is the ultimate fact-finding body empowered to resolve conflicts in evidence, to determine the credibility of witnesses, and to determine the weight to be accorded to evidence. *Unemployment Compensation Board of Review v. Wright,* 21 Pa.Cmwlth. 637, 347 A.2d 328 (1975).

*zerne v. Unemployment Compensation Board of Review,* 148 Pa.Cmwlth. 473, 611 A.2d 1335 (1992). Although the statute does not define willful misconduct, this Court has held that, for behavior to constitute willful misconduct, it must evidence:

(1) wanton and willful disregard of an employer's interests, (2) a deliberate violation of an employer's rules, (3) a disregard of standards of behavior which an employer may rightfully expect from an employee, or (4) negligence which manifests culpability, wrongful intent, evil design, or intentional and substantial disregard for an employer's interests or an employee's duties and obligations.

*Alexander v. Unemployment Compensation Board of Review,* 138 Pa.Cmwlth. 647, 588 A.2d 1341, 1342 (1991).

■ Once the employer makes out a prima facie case of willful misconduct, the burden shifts to the claimant to prove that his actions did not constitute willful misconduct under the facts or that he had good cause for his behavior. *Estate of Fells by Boulding v. Unemployment Compensation Board of Review,* 160 Pa.Cmwlth. 493, 635 A.2d 666 (1993), *petition for allowance of appeal denied,* 538 Pa. 651, 647 A.2d 905 (1994). Good cause is established "where the action of the employees is justified or reasonable under the circumstances." *Frumento v. Unemployment Compensation Board of Review,* 466 Pa. 81, 87, 351 A.2d 631, 634 (1976).

■ ■ Claimant concedes that Employer established a prima facie case of willful misconduct. (Claimant's Brief at 8.) His one issue for our review is whether the Board erred in determining that his organic mood disorder did not nullify the willful misconduct of failing to report either to work or off work on three successive days.[3] Our scope of review

is limited to determining whether constitutional rights were violated, whether an error of law was committed or whether the findings of fact are supported by substantial evidence. *Dingbat's v. Unemployment Compensation Board of Review,* 123 Pa.Cmwlth. 73, 552 A.2d 1157 (1989).

In support of his contention that the mood disorder negated any willful misconduct, Claimant presented his testimony that he was suffering from the disorder on the days in question and submitted into evidence, without objection, a copy of a physician's certification of his mental condition. (R.R. 3–4a.) First, we address the admissibility of the certification exhibit.

■ In another case involving a claimant who testified as to his own mental disorder and argued that the disorder constituted good cause for willful misconduct, we concluded that an *objected to* report from the claimant's treating psychologist supporting claimant's testimony was inadmissible because it presented an unsworn statement made by a doctor who did not appear before the referee and give his testimony subject to cross-examination. *Brady v. Unemployment Compensation Board of Review,* 115 Pa. Cmwlth. 221, 539 A.2d 936, 938 (1988). Here, Employer did not make a hearsay objection to the physician's certification. Therefore, under *Walker v. Unemployment Compensation Board of Review,* 27 Pa. Cmwlth. 522, 367 A.2d 366 (1976), if the hearsay evidence of the physician's certification was corroborated by other competent evidence, it could have been admissible.

Arguably, the physician's certification was corroborated by Claimant's own testimony about his disorder. Also, Employer does not dispute that Claimant suffers from the disor-

---

**3.** Claimant in section II of his brief additionally argues that Employer failed to give Claimant adequate notice that his behavior would lead to discharge. We note that this issue was not raised in his "Statement of Questions Involved" and that, accordingly, we could decline to address it. *See Brinson v. Department of Public Welfare,* 163 Pa.Cmwlth. 408, 641 A.2d 1246, 1247 n. 3 (1994). In any event, we find that the argument has no merit because there is substantial evidence to support the Board's finding that Employer's representative advised Claimant on

the telephone that further absenteeism would lead to disciplinary action and that he should report to work on July 19, 1995. (Finding of Fact No. 7.) When Claimant did not report to work until July 20, 1995, he had to have realized that some form of disciplinary action was highly probable, if not a certainty. *Bullock v. Unemployment Compensation Board of Review,* 43 Pa. Cmwlth. 528, 402 A.2d 734 (1979) (holding that past leniency does not excuse willful misconduct after a claimant has received warnings that failing to report to work might result in discipline).

der and did not challenge the Board's finding to that effect. (Finding of Fact No. 2.) Therefore, we will consider the physician's certification in determining whether good cause existed for Claimant's actions.

The physician's certification is a pre-printed page with a list of nine questions preceded by empty blocks that a physician may mark if applicable and succeeded by black spaces for further elaboration if necessary. In response to the question "What was the nature of the illness," the physician wrote "organic mood disorder." In response to the question, "Would this disability, illness or injury have prevented the patient from working for a period of three days or more," the physician checked the box marked "Yes."

Claimant contends that, coupled with his testimony, the certification was sufficient to demonstrate that his conduct was reasonable or justified under the circumstances. We disagree.

■ The physician's positive response to the most applicable question, whether the disorder would have prevented Claimant from missing three days of work, does not stand for the proposition that Claimant's mood disorder caused his behavior to be reasonable or justified under the circumstances. The positive response merely indicates that it is possible that someone with Claimant's condition may miss three days, not that it is reasonable or justifiable to do so without even calling Employer to report off work.

Indeed, without further elaboration from the physician who filled out the certification, for example, there is simply no evidence from a qualified person concerning the relationship between the mood disorder and its effect on Claimant's ability to report either to work or off work. *See Brady v. Unemployment Compensation Board of Review*, 115 Pa. Cmwlth. 221, 539 A.2d 936 (1988) (holding that testimony by a person possessing sufficient skill, knowledge or experience in the field of mental disorders was necessary in a case involving a claimant who assaulted a co-worker of Vietnamese origin and argued that his actions were due an impulsive manifesta-

tion of post-traumatic disorder thereby negating willful misconduct).

■ Similarly, we conclude that Claimant's testimony that he was suffering from the disorder on the days in question was insufficient to establish good cause. Although arguably an expert on his own condition, Claimant is not an expert in the field of mental disorders. *See Department of Navy v. Unemployment Compensation Board of Review*, 158 Pa.Cmwlth. 605, 632 A.2d 622 (1993) (holding that claimant's statements that he suffered from obsessive-compulsive disorder were insufficient to establish good cause to negate the willful misconduct of defrauding the government of nearly $30,-000.00 by charging it for non-work related trips) *and Brady*. In addition, even though Claimant was allegedly suffering from his disorder on July 18th, he testified that he called Employer that evening "[b]ecause I took off work and I knew, you know, I had to call." (R.R. 27a.) Thus, Claimant himself rendered the causal relationship between his disorder and his ability to report either to work or off work even less clear.

■ Therefore, even though the Board found that Claimant was suffering from a "mood" on the days in question,[4] we find it less than obvious from Claimant's testimony and from the terse physician certification that his failure even to report off work was due to a flare-up of his mood disorder. Further, assuming that his failure to report either to work or off work was due to his disorder, we conclude that the Board did not err in concluding that his behavior was a disregard of the standards an employer has a right to expect of an employee, with or without disabilities.

Accordingly, we affirm the Board's order denying Claimant unemployment compensation benefits.

### ORDER

AND NOW, this 6th day of November, 1996, the order of the Unemployment Compensation Board of Review dated January 25, 1996 is hereby affirmed.

---

4. (Finding of Fact No. 11.)

FRIEDMAN, Judge, dissenting.

I respectfully dissent. Unlike the majority, I believe that the Unemployment Compensation Board of Review (UCBR) failed to properly consider its own finding that Claimant's lifelong "organic mood disorder," which manifests itself in periods of depression, prevented Claimant from getting out of bed on the days in question. (UCBR's Findings of Fact, Nos. 2, 11.) I believe that, properly considered, this finding leads to the inevitable conclusion that Claimant's mental illness constitutes "good cause" for his conduct and, thus, I would reverse the UCBR's order and grant benefits to Claimant.

The majority, relying upon Finding of Fact, No. 11, points out that: "[T]he [UCBR] found that Claimant was suffering from a 'mood' on the days in question." (Majority op. at 1100.) However, the majority's recitation of the finding is incomplete; indeed, the UCBR found that Claimant "was in a 'mood' *and simply could not get out of bed.*" (UCBR's Finding of Fact, No. 11.) (Emphasis added.) If Claimant literally "*could not* get out of bed" as a result of his mental illness, then I believe that Claimant had "good cause" for his failure to go to work or report off work.[1]

The UCBR, after finding that Claimant had a lifelong "organic mood disorder," (UCBR's Finding of Fact, No. 2), analyzes this case as if Claimant were, at all times, a "reasonable person." The UCBR writes:

> Claimant's actions, *regardless of his disability,* were inimical to [E]mployer's best interests and a disregard of the standards of behavior that an employer has a right to expect of its employees.

(UCBR's op. at 2.) (Emphasis added.) However, where, as here, the issue is whether Claimant's mental illness constitutes "good cause" for his conduct, the UCBR cannot simply *disregard* the mental illness and treat Claimant like an otherwise "reasonable person" after finding that he was suffering from a mental illness on the days in question.

The majority accepts as a fact that Claimant was suffering from his mood disorder on the days in question; however, like the UCBR, the majority then concludes that Claimant's mental illness does *not* constitute "good cause" for his conduct. In reaching its conclusion, the majority states: "[W]e find it less than obvious from Claimant's testimony and from the terse physician certification that his failure [to go to work or] ... to report off work was due to a flare-up of his mood disorder." (Majority op. at 1100.) In other words, the majority examined the evidence, *rejected* Claimant's testimony concerning the effects of his mental illness, weighed the remaining evidence and made its own finding that Claimant's mental illness did *not* cause his behavior on the days in question.[2] However, it is the province of the UCBR, not this court, to make credibility determinations, to weigh the evidence and to make findings of fact. *Unemployment Compensation Board of Review v. Wright,* 21 Pa. Cmwlth. 637, 347 A.2d 328 (1975).

Moreover, the majority's finding is contrary to Finding of Fact, No. 11, which I believe is supported by substantial evidence in the record. Indeed, the physician's certification states that Claimant's mental illness would prevent Claimant from working for a period of three days *or more.* (R.R. at 4a.) In addition, Claimant testified that, on the days in question, he was suffering from a depression which prevented him from getting out of bed. (R.R. at 30a.) Certainly, a reasonable mind could conclude from this

---

1. Over the years, the Mars School District (Employer) recognized that Claimant had behavioral problems due to his mental illness, and Employer is to be commended for its leniency towards Claimant during the period of employment. Employer nevertheless had the right to terminate Claimant for his erratic conduct, even if such conduct was a result of his mental illness. However, the issue before this court is whether Claimant had "good cause" for his behavior and, therefore, is eligible for unemployment compensation.

2. The majority evidently believes that Claimant should have been able to get out of bed and go to work in spite of his mental illness; or, at least, Claimant should have been able to report off work. However, I note that, because Claimant did not have a telephone, Claimant would have had to get out of bed, get dressed, go outdoors and find someone on the street to take him to a pay telephone in order to report off work. (UCBR's Finding of Fact, No. 6.)

evidence, as the UCBR did here, that Claimant's mental illness prevented him from getting out of bed on the days in question. *Eck v. Unemployment Compensation Board of Review,* 651 A.2d 689 (Pa.Cmwlth.1994).

The majority believes that it takes an expert to testify that Claimant's mental illness prevented him from getting out of bed on the days in question. I cannot agree. If Claimant had sought treatment from his physician, who is aware that Claimant's mental illness is severe enough to prevent Claimant from working for three days or more,[3] and Claimant had told his doctor that he had recently suffered from the mood disorder for three days and could not get out of bed, his doctor would have had no reason to disbelieve Claimant. Thus, like the UCBR, I would accept Claimant's testimony here; indeed, in our appellate role, we cannot alter the UCBR's credibility determination.

Finally, the majority writes:

[A]ssuming that [Claimant's] failure to report either to work or off work *was* due to his disorder, we conclude that the [UCBR] did not err in concluding that his behavior was a disregard of the standards an employer has a right to expect of an employee, with or without disabilities.

(Majority op. at 1100.) (Emphasis added.) However, in this statement, the majority loses sight of the issue before us. *If* Claimant's conduct was due to his mood disorder, as the majority assumes arguendo, then the issue is *not* whether the conduct manifests a disregard of standards which an employer has a right to expect; rather, the issue is whether Claimant's mental illness constitutes "good cause" for the conduct. Certainly, *if* the UCBR found that Claimant's mood disorder prevented him from going to work or reporting off work, and the UCBR did make such a finding here, then Claimant had "good cause" for his conduct.

Because the UCBR failed to properly consider Claimant's mental illness in deciding whether Claimant had "good cause" for his

conduct on the days in question, I would reverse.

---

**3.** An "organic mental disorder" is "a psychological or behavioral abnormality associated with transient or permanent dysfunction of the brain, usually characterized by the presence of an organic mental *syndrome.*" Stedman's Medical Dictionary 457 (25th ed. 1990).