# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

C. D. B.,
                  Petitioner     :
                                    :
      v.                          :   No. 811 C.D. 2018
                                      :   Submitted: February 11, 2019
Unemployment Compensation     :
Board of Review,               :
                  Respondent   :

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
                HONORABLE ROBERT SIMPSON, Judge
                HONORABLE P. KEVIN BROBSON, Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON**               **FILED: March 7, 2019**

          C.D.B. (Claimant) petitions for review from an order of the Unemployment Compensation Board of Review (Board). The Board affirmed a referee's decision finding Claimant ineligible for unemployment compensation (UC) benefits on the basis of willful misconduct under Section 402(e) of the Unemployment Compensation Law.[1] Upon review, we affirm the Board's order.

## I. Background

          Claimant was employed for about two years as a housekeeper at a hotel (Employer). Claimant suffers from mental health issues including bipolar disorder, manic depression, antisocial disorder, and panic attacks. He requested, and Employer granted, an accommodation in the form of approved intermittent leave under the Family and Medical Leave Act of 1993 (FMLA),[2] excusing him from work

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, as amended, 43 P.S. §802(e).

[2] 29 U.S.C. §§2601-2654.

as needed. Of significance, Claimant did not request any other form of accommodation.

In September 2017, Claimant suffered a panic attack while at work. He reported to the housekeeping manager, who was new to her position and was not familiar with Claimant. Although Claimant had difficulty articulating his problem at first, he stated he had mental health issues and was "not safe to be [t]here." Certified Record (C.R.), Item #3 at 17; C.R., Item #13 at 5; Referee's Hr'g Notes of Testimony (N.T.), 11/20/17, at 16. He was visibly agitated, red in the face, and stuttering. While the housekeeping manager waited with him for the elevator in order to escort him out, Claimant began complaining about his immediate supervisor (Supervisor), stating she was "always on his case" and he would like to punch her or throw her out the window, but the window would not open. C.R., Item #3 at 17.

Another employee approached and asked whether Claimant was okay. He responded by asking whether he could bite her.

Employer has a zero tolerance anti-violence policy that provides, in part: "We believe associates should work in an environment without intimidation, threats or violence. Associates must refrain from making bizarre or offensive comments regarding violent events and/or behavior." C.R., Item #3 at 5, 9; N.T. at 10 & Ex. Employer 2.

2

After investigating the September 2017 incident, Employer concluded Claimant violated the anti-violence policy. Employer therefore terminated Claimant's employment.

Claimant applied for UC benefits. In his claimant questionnaire, he acknowledged he was or should have been aware of Employer's anti-violence policy. As additional information, Claimant explained:

> The workplace has becom[e] increasing[ly] frustrating because we are having an audit and there were no supplies available. I am getting calls from [Supervisor] on my personal phone. She is telling me that we need rooms done because there are customers waiting for early check outs. I started to have a panic attack and I asked to leave. I am given permission to leave and on my way out, I made a comment out [] loud to myself, that I wish I coul[d] punch [Supervisor] in the face or push her out the window. Then I laughed and said the window doesn't open ….

C.R., Item #2 at 1.

In his oral interview concerning his application for UC benefits, Claimant excused his comment about Supervisor by stating: "I didn't direct my comments to [Supervisor], I was leaving the premises. I don't feel that I violated the rule because I didn't say it directly to [Supervisor]." C.R., Item #4 at 1.

UC benefits were denied, and Claimant filed a petition for appeal. He stated, "[I] didn't directly threaten anyone. They knew I have [mental health] issues and I asked to leave after having a panic attack from being harassed – will explain more at hearing." C.R., Item #6 at 1.

3

At the hearing, Claimant was represented by counsel. Employer appeared with its tax consultant representative. Claimant testified, as did two witnesses for Employer.

Claimant recalled and admitted making the statements at issue, although he denied an intent to threaten anyone. He acknowledged that Employer's policy prohibits any threatening statements. Claimant stated he did not realize the policy forbade his indirect comments about Supervisor. However, he conceded: "I realized if I would, if I would have said that directly to [Supervisor], that's completely inappropriate." N.T. at 24. Further, Claimant agreed that Employer's policy did not state it was limited to threats made directly to the person being referenced. Claimant also agreed that asking a coworker if he could bite her was bizarre or inappropriate, and it violated Employer's policy.

Claimant described his feelings during a panic attack: "[I] get really overwhelmed with like, it feels like my heart's going to jump out of my chest, I can't concentrate. That at most of the times, I get to shaking. I just can't calm down. Like, shortness of breath, dizzy, just messed up, not good." N.T. at 19. Notably, Claimant did not suggest he had trouble controlling the content of his speech during panic attacks, was unable to stop himself from making the statements at issue, or suffered a lapse in judgment rendering him unable to recognize the import of his statements.

The referee affirmed the initial determination of ineligibility. The referee concluded: "Claimant's language and statements made in reference to

4

[Supervisor] which were stated in the presen[ce] of the housekeeping manager included a clear and explicit threat communicating a desire to engage in physical violence towards [Supervisor]." Ref.'s Dec., 11/22/17, at 4. Further, the referee found the context of Claimant's statements, made while he was "highly agitated and physically upset," clearly indicated "threatening language in violation of the Employer's reasonable policies." Id. Accordingly, the referee determined Employer met its burden of proving willful misconduct.

The referee further concluded Claimant did not meet his burden of demonstrating good cause for his conduct. Of import to Claimant's petition for review, the referee stated that, because Claimant offered mental illness as good cause for his rule violation, expert testimony was necessary to establish that Claimant's conduct was beyond his control. Claimant offered no such evidence. Thus, the referee determined Claimant failed to meet his burden of showing good cause for willful misconduct.

Claimant appealed. The Board affirmed, adopting and incorporating the referee's findings and conclusions. The Board credited Claimant's evidence of treatment for mental health issues, but found Claimant "failed to establish that his mental illness was the cause of his willful misconduct." Bd. Dec., 5/14/18 at 1.

## II. Issues

On appeal,[3] Claimant raises three interrelated issues. First, he contends the Board erred in finding he committed willful misconduct, because the conduct complained of was not willful. Second, he argues the Board erred in finding he lacked good cause for his conduct, because his outburst was caused by mental illness. Finally, he asserts the Board applied an arbitrary legal standard and disregarded evidence of his mental illness.

## III. Discussion
## A. Willful Misconduct

In determining eligibility for UC benefits, willful misconduct is: (1) wanton and willful disregard of the employer's interest; (2) deliberate violation of rules; (3) disregard of standards of behavior an employer rightfully expects; or (4) negligence manifesting culpability, wrongful intent, evil design, or intentional and substantial disregard for the employer's interests or the employee's duties and obligations. Ellis v. Unemployment Comp. Bd. of Review, 59 A.3d 1159 (Pa. Cmwlth. 2013). Whether specific conduct constitutes willful misconduct is a question of law, which is reviewable by this Court. Klampfer v. Unemployment Comp. Bd. of Review, 182 A.3d 495 (Pa. Cmwlth. 2018).

---

[3] Our review is limited to determining whether the Board lacked substantial evidence for a material finding of fact, made an error of law, violated the petitioner's constitutional rights, or failed to follow agency procedures. Ductmate Indus., Inc. v. Unemployment Comp. Bd. of Review, 949 A.2d 338 (Pa. Cmwlth. 2008). Substantial evidence is relevant evidence sufficient to allow a reasonable mind to reach a conclusion. Kauffman Metals, LLC v. Dep't of Labor & Indus., 126 A.3d 1045 (Pa. Cmwlth. 2015), appeal denied, 135 A.3d 588 (Pa. 2016).

The Board is the ultimate finder of fact, resolving all issues of credibility, conflicting evidence, and evidentiary weight. Ductmate.

The employer has the burden of proving willful misconduct. Id. If the misconduct consists of violating a rule, the employer must show that the rule existed, the rule was reasonable, the employee was or should have been aware of the rule, and the employee violated the rule. Johns v. Unemployment Comp. Bd. of Review, 87 A.3d 1006 (Pa. Cmwlth. 2014).

Here, all four requisite factors are present. Claimant acknowledged the existence of Employer's anti-violence policy. C.R., Item #2 at 1. A workplace policy against threats is reasonable. Johns. Claimant specifically admitted he knew or should have known about Employer's anti-violence policy. N.T. at 23. Moreover, regarding his threat against Supervisor, Claimant conceded he knew he would violate the anti-violence policy if he made such a statement directly to her. Id. at 24. He also acknowledged the anti-violence policy did not distinguish between statements made indirectly about someone and statements made directly to the person. Id. Claimant agreed his comment about Supervisor was threatening in nature if made to someone (such as the new housekeeping manager) who did not know him. Id. This Court holds that a threat of harm toward a supervisor or coworker constitutes willful misconduct. Johns. Further, Claimant expressly admitted that asking another employee if he could bite her was bizarre or inappropriate and violated Employer's policy. N.T. at 24-25.

Nonetheless, Claimant suggests his statements were not willful because he was not able to control them, and they were not threatening because he did not intend to harm anyone. Neither argument has merit.

### 1. Control over Threatening Statements

At the hearing, Employer's counsel argued: "What [Claimant] said, where he was when he said it, leads one to believe that he was within his senses and control at the time." Id. at 26. Claimant did not contradict this argument at the hearing. Nonetheless, Claimant now insists he did not act willfully. He argues that he has a serious mental illness that Employer acknowledged by granting intermittent FMLA leave. He contends his comments were not intended as threats, and he did not intend to harm anyone. He now posits in his brief what he did not assert at the hearing, that because he was "in the throes of a panic attack," he "was incapable of intentionally violating (or, for that matter, complying with) Employer['s] policy." Br. for Pet'r at 14.

More importantly, both Claimant's argument and the record are bare of any averment, much less any evidence, that Claimant was unable to control himself to an extent that made his statements involuntary. Claimant described his mental state during a panic attack as "a blackout at times." N.T. at 19. However, he explained during the hearing that what he termed "a blackout" was simply uncertainty about the timing of events; he remembered his comments themselves very clearly. Id. at 19, 23-24. Contrary to Claimant's suggestion, nothing in the record supports an inference that his subsequent inability to recall the specific timetable of events indicated an inability to control his spoken comments at the time he made them.

Notably, Claimant does not suggest that he made involuntary statements during any previous panic attack. His request for an accommodation of his mental condition by Employer involved only intermittent FMLA leave.

8

Although Claimant used his allotted intermittent FMLA leave on previous occasions, nothing in the record indicates any of those occasions involved statements in violation of Employer's anti-violence policy. Importantly, Claimant did not seek any leniency in Employer's zero tolerance anti-violence policy as an accommodation based on a contention that he was unable to control his verbal comments during a panic attack.

There is no evidence in the record from which either an expert witness or a finder of fact could infer that Claimant's panic attack caused his comments concerning Supervisor and a coworker. Accordingly, the Board did not err in concluding Claimant acted willfully.[4]

## 2. Context Indicating a True Threat

Claimant also argues his comments about Supervisor did not violate Employer's policy because Supervisor was not present, he was not speaking to Supervisor, he did not intend his comments as a threat, and he would not actually harm anyone. We discern no merit in this argument.

A UC claimant makes a threat constituting willful misconduct where his statement conveys intent to inflict harm on another. Johns. "In addition to the words used in a threat, this Court is mindful of the effect the statement has on the

_____

[4] Claimant also implies Employer somehow failed to expedite his departure from work during his panic attack, and thereby failed to provide him with the agreed accommodation. However, nothing in the record indicates Claimant's departure was delayed for more than the time required for him to tell the housekeeping manager he needed to leave and for her to escort him to the elevator. Claimant does not point to any record evidence that there was a faster way to exit the building, or that there was any undue delay by the housekeeping manager in responding to his request.

hearer, and the reasonableness of construing the statement as a credible threat in context." Id. at 1010.

In Johns, the claimant suffered from an emotional disability, which his employer accommodated by assigning him a workplace advocate. On one occasion, the claimant became upset and frustrated when he could not reach his advocate. He stated to his supervisor that if his advocate were in the building, he would hurt her. The claimant was red in the face, twitching, and bouncing in his seat. His supervisor observed the claimant was very frustrated and upset, giving rise to concern that he might actually have hurt his advocate if she were in the building.

The claimant, however, insisted he did not intend to threaten or harm anyone. In considering the totality of the circumstances, this Court acknowledged several factors suggesting the claimant's statement was not a true threat: "The statement was somewhat conditional; it was not communicated directly to the [a]dvocate; the [a]dvocate was not aware that the statement had been made; and, it was physically impossible for the [c]laimant to immediately act on the statement because the [a]dvocate was not at the workplace that day." Id. at 1012.

Nonetheless, this Court concluded the evidence, especially the words used, the claimant's demeanor, and the effect on his supervisor, demonstrated a true threat, indicating "a serious expression of intent to inflict harm." Id.

Here, the circumstances closely parallel those in Johns. Claimant was red in the face, twitching, stuttering, and visibly frustrated. C.R., Item #3 at 17. He

10

told the housekeeping manager, "I'm not safe to be here." C.R., Item #3 at 17; N.T. at 16. He complained that Supervisor was always on his case and stated he wanted to punch her or throw her out the window. C.R., Item #3 at 17. The housekeeping manager was surprised and taken aback by Claimant's comments. N.T. at 14. Although Supervisor was not aware of Claimant's statement about her, and Claimant could not immediately act on his statement, his words, his demeanor, and the effect of his statement on the hearer all demonstrated a threat in the form of a statement of intent to inflict harm.

Moreover, and of importance, Claimant here also violated Employer's anti-violence policy separately from any threat against Supervisor, when he admittedly asked a coworker if he could bite her. N.T. at 24-25. Without regard to whether his statement about Supervisor constituted a true threat, Claimant still violated Employer's policy.

Thus, the Board correctly concluded Employer met its burden of proving willful misconduct.

**B. Good Cause**

Once an employer sustains its burden of establishing willful misconduct, the burden shifts to the claimant to prove there was good cause for the misconduct. Klampfer. A claimant has good cause where his actions are justifiable and reasonable under the circumstances. Id.

11

Claimant argues good cause may arise from mental illness, and demonstrating good cause does not necessarily require expert medical testimony. Claimant cites Seneca Valley School District v. Unemployment Compensation Board of Review (Pa. Cmwlth., No. 267 C.D. 2008, filed September 9, 2008), 2008 Pa. Commw. Unpub. LEXIS 384 (unreported),[5] where despite the absence of expert medical testimony, the claimant's psychotic episode constituted good cause for her profanity and threats to report her concerns about her employer to the newspapers.

The claimant in Seneca Valley, an elementary teacher, was arrested and involuntarily committed to a psychiatric unit for several days after a meeting in which she used escalating profanity and threatened to contact the newspapers about issues concerning the school. According to the record in Seneca Valley, the claimant "testified that she 'could tell what was happening in [her] head but couldn't stop it'"; she "admitted that using profanity was unacceptable, but testified that she 'couldn't stop it that day.'" Slip Op. at 5; 2008 Pa. Commw. Unpub. LEXIS 384 at *5-*6. Thus, the claimant in Seneca Valley expressly testified she was unable to control her statements.

Here, by contrast, Claimant offered no testimony or other evidence that his panic attack or other mental health issues rendered him unable to stop himself from making threatening and bizarre comments. Seneca Valley is therefore distinguishable. Accord Cameron v. Unemployment Comp. Bd. of Review (Pa. Cmwlth., No. 367 C.D. 2012, filed March 8, 2013), 2013 Pa. Commw. Unpub. LEXIS 182 (unreported) (claimant did not offer testimony, expert or otherwise,

---

[5] Under this Court's internal operating procedures, an unpublished decision may be cited as persuasive, but not as binding authority. 210 Pa. Code §69.414(a).

12

establishing a link between mental disorder and failure to correctly perform job functions; testimony that she was stressed and suffering from mental disorder was insufficient to prove good cause based on mental health issues).

As discussed further below, Claimant also argues the Board applied an incorrect legal standard by requiring expert medical evidence to establish Claimant was unable to control his comments because of his mental condition. However, there is no record evidence to support a threshold factual finding that Claimant could not control his statements. Thus, it is irrelevant whether he offered expert testimony that such a purported loss of control resulted from a panic attack. Accordingly, the Board correctly rejected Claimant's argument of good cause.

### C. Expert Evidence

Finally, Claimant argues the Board erred by requiring expert medical testimony. Claimant contends the Board improperly stated a blanket requirement that expert medical testimony is always required to support a UC claimant's averment of mental illness. Claimant insists his own testimony and other evidence of record may suffice to meet his burden of proof, without the need for an expert. However, we need not reach that issue. Regardless of whether Claimant's legal argument might have some merit as a general proposition, it is inapplicable in the circumstances of this case.

At the hearing, Claimant submitted a letter from his treating therapist describing his diagnoses and the treatments he was receiving. C.R., Item #1. After Employer's counsel objected on the basis of hearsay, Claimant's counsel explained the letter was not offered for the truth of the matters asserted therein, other than

13

showing Claimant was receiving treatment. The referee admitted the letter for that limited purpose. N.T. at 21-22. Claimant presented no medical evidence of a causal connection between his mental health issues and his comments concerning Supervisor and a coworker; nor did he offer any medical evidence that he lacked the ability to control his comments at the time he made them.

In Brady v. Unemployment Compensation Board of Review, 539 A.2d 936 (Pa. Cmwlth. 1988), the employer terminated the claimant's employment after he assaulted another employee without provocation. The claimant, a Vietnam veteran, argued his assault on his coworker, who was Vietnamese, was not willful. Rather, it was "an impulsive manifestation of Post-Traumatic Stress Disorder (PTSD), an anxiety disorder from which he suffer[ed] as a result of his combat experiences in Vietnam, and beyond his limits of self-control." Id. at 938. This Court found expert medical testimony was required to establish a causal connection between claimant's PTSD and his assault on his coworker, because it was "less than obvious that the assault committed by the claimant was attributable to the mental disorder he was laboring under, so that the causal connection between the two could be inferred by the fact-finder, without the aid of expert testimony." Id. at 939.

In Jordan v. Unemployment Compensation Board of Review, 684 A.2d 1096 (Pa. Cmwlth. 1996), a head injury left the claimant with permanent impairments including a mood disorder, physical imbalance, depression, and emotional outbursts. The employer terminated his employment for failing to comply with absence reporting requirements. The claimant argued his mental state rendered him incapable of getting out of bed some mornings, even to call off work. This

Court observed that, although the claimant was arguably an expert on his own condition, he was not an expert on mental disorders. His statement of his diagnosis and his description of his mood disorder could not establish good cause so as to negate willful misconduct.

The claimant's physician in Jordan certified that the claimant's mood disorder could cause him to miss work. However, this Court found that statement insufficient to show the claimant was incapable of calling in on the days he did not report to work. Thus, it did not support a finding of good cause for the claimant's failure to comply with the employer's absenteeism policy. As this Court explained, "without further elaboration from the physician who filled out the certification, for example, there is simply no evidence from a qualified person concerning the relationship between the mood disorder and its effect on [the] [c]laimant's ability to report either to work or off work." Id. at 1100 (citing Brady).

Here, Claimant asserted neither that his comments were an impulsive manifestation of a panic attack, nor that they were beyond the limits of his self-control. Thus, the causal connection between Claimant's comments and his panic attack was even less obvious than the alleged causal connections in Brady and Jordan, both of which required expert medical evidence to support the claimants' alleged lack of control over their conduct. Accordingly, assuming the Board erroneously stated a blanket requirement of expert medical evidence in cases of mental illness, it did not err in requiring such evidence in this case.[6]

_____

[6] This Court may affirm on a different basis from that on which the Board relied, provided the correct basis for affirmance is clear from the record. Butler Twp. Bd. of Sup'rs v. Dep't of Envtl. Res., 513 A.2d 508 (Pa. Cmwlth. 1986).

15

## IV. Conclusion

Employer does not dispute that Claimant suffers from several significant mental health issues. Nonetheless, Employer met its burden of proving it terminated Claimant's employment because of willful misconduct. Claimant failed to establish that his mental health issues caused his threatening, bizarre, and inappropriate comments concerning Supervisor and a co-worker. Specifically, he failed to establish he could not control his statements at the time he made them. Claimant's argument of legal error by the Board in requiring expert medical evidence is insufficient to overcome the total absence of record evidence to demonstrate good cause for his willful misconduct.

Therefore, we affirm the Board's order declaring Claimant ineligible for UC benefits.

ROBERT SIMPSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

C. D. B.,
                 Petitioner    :
                                 :
        v.                   :   No. 811 C.D. 2018
                                 :
Unemployment Compensation   :
Board of Review,              :
                 Respondent  :

# **O R D E R**

**AND NOW**, this 7th, day of March, 2019, the order of the Unemployment Compensation Board of Review is **AFFIRMED**.

 

                                    _____
                                      ROBERT SIMPSON, Judge