# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Trevor Losinger, : 
                Petitioner : 
                 : 
        v. :   No. 953 C.D. 2020
                 :   Submitted: March 12, 2021
Unemployment Compensation : 
Board of Review, : 
             Respondent : 

BEFORE:   HONORABLE P. KEVIN BROBSON, President Judge
              HONORABLE MICHAEL H. WOJCIK, Judge
              HONORABLE CHRISTINE FIZZANO CANNON, Judge

*OPINION NOT REPORTED*

**MEMORANDUM OPINION**
**BY PRESIDENT JUDGE BROBSON**           **FILED: July 2, 2021**

Trevor Losinger (Claimant) petitions for review of an order of the Unemployment Compensation Board of Review (Board). The Board affirmed a decision of a Referee, thereby denying Claimant unemployment compensation benefits pursuant to Section 402(e) of the Unemployment Compensation Law (Law),[1] relating to willful misconduct. For the reasons set forth below, we affirm.

Claimant applied for unemployment compensation benefits after being discharged from his employment as a furnace operator for Waupaca Foundry, Inc. (Employer). (Certified Record (C.R.), Item No. 2 at 2.) On April 1, 2020, the Scranton UC Service Center (Service Center) issued a notice of determination,

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e).

finding Claimant ineligible for benefits under the Law. (C.R., Item No. 6.) Claimant appealed the notice of determination, and the Referee conducted a hearing. (C.R., Item Nos. 7, 9.)

At the hearing, Employer presented the testimony of Heidi Basham (Basham), Employer's Assistant Human Resources Manager. (C.R., Item No. 10 at 2.) Basham testified that Claimant started working for Employer on January 11, 2012. (*Id.* at 4.) Basham explained that Employer suspended Claimant's employment effective February 23, 2020, and ultimately terminated his employment on March 2, 2020, because Claimant violated Employer's attendance policy, which is part of Employer's "Code of Conduct." (*Id.* at 5; *see* C.R., Item No. 3 at 12-16.) She further stated that Employer's progressive discipline policy begins with a verbal warning when an employee has 6 absences in a 12-month period, or 3 absences in a 6-month period, and then progresses, with each succeeding absence, to a written warning, a suspension, and, finally, potential termination following an investigation and hearing. (C.R., Item No. 10 at 6.)

Basham further testified that Claimant's assigned shift on February 23, 2020, was to begin at 10:45 p.m., but that Claimant clocked in at 11:46 p.m. that night, "so he was an hour late." (*Id.* at 7.) She stated that he claimed car trouble as the reason for his tardiness.[2] (*Id.*) Basham also testified that Employer's call-off policy requires employees to call Employer one to two hours before missing a shift. (*Id.*) She explained that, to her knowledge, Claimant did not call Employer regarding his absence on February 23, 2020, but a supervisor called Claimant after discovering his absence shortly after the start of his scheduled shift. (*Id.* at 7-8.) Basham also

---

[2] During her testimony, Basham expressed some confusion about whether Claimant's shift was to begin at 10:45 p.m. or 11:00 p.m., (C.R., Item No. 10 at 7), but Claimant conceded during his testimony that the shift began at 10:45 p.m. (*Id.* at 13).

2

testified that Claimant was aware of Employer's attendance policy and that the policy was posted in Employer's workplace. (*Id.* at 8.)

Basham further testified that, during the investigation she conducted following Claimant's suspension, Claimant asserted that his supervisor had excused his tardiness on February 23, 2020, such that it would not merit discipline. (*Id.* at 8-9.) According to Basham, Claimant's supervisor denied excusing Claimant's absence but explained that he had merely instructed Claimant to come to work as quickly as possible after resolving his car trouble. (*Id.* at 9.) Basham also recounted that Claimant believed, based on alleged statements by his supervisors, that he would be able to make up the time he missed by staying late at the end of his scheduled shift. (*Id.*) Basham spoke with two supervisors and four other employees in Claimant's department, all of whom denied that such make-up time had ever been offered to tardy employees. (*Id.*)

Claimant testified on his own behalf. He first conceded that he was aware of Employer's policy requiring employees to call before missing a shift but stated his belief that this applies only when an employee is absent for an entire shift, not merely late. (*Id.* at 11.) Concerning why he did not call to advise Employer that he would be late, Claimant stated that no supervisors were at work on the day of his shift to take his call, and that he did not have any other contact information for Employer. (*Id.* at 11-12.) After the Referee asked why Claimant did not call and speak with another employee or leave a message, Claimant ultimately admitted that he did not call because he knew that "[the supervisor would] end up getting a[]hold of [Claimant]." (*Id.* at 12.) Claimant then reiterated that the only number provided to him for calling off was the supervisor's office, which he claimed was unstaffed before his shift. (*Id.* at 12-13.)

3

Claimant conceded that he was supposed to be at work at 10:45 p.m. on February 23, 2020, and he testified that his supervisor called him at about 11:20 p.m. after he failed to arrive for his shift. (*Id.* at 13.) Despite the Referee asking him, Claimant did not identify the location at which he experienced car trouble, but he did state that he did not have cellular service at that location. (*Id.*) He also explained that his home is located 10 minutes from Employer's workplace and that moving to a location with cellular service would have taken longer than simply driving to work. (*Id.* at 13-14.) Despite these assertions, Claimant later conceded, consistent with his earlier testimony, that he "just didn't call because nobody was there" and "there[ was] nobody to call." (*Id.* at 14.) Claimant later explained that he had sufficient cellular service to receive his supervisor's call at 11:20 p.m. but that he did not attempt to get a signal to call Employer because his supervisor "wasn't there." (*Id.* at 18-19.)

When the Referee asked Claimant about the nature of his car trouble, Claimant stated that his car would not start and that it was later repaired, but he did not identify the type of repairs performed, despite being asked to do so multiple times by the Referee. (*Id.* at 14-15.) Claimant acknowledged that, even though he experienced car trouble before February 23, 2020, he had not obtained an alternate phone number from Employer that he could use to reach a supervisor. (*Id.* at 15.) Finally, Claimant testified that he had accrued only 7 absences in a 12-month period as of February 23, 2020, so he could not be terminated pursuant to the progressive discipline policy, which, he claimed, reserves termination for 8 or more absences in a 12-month period. (*Id.* at 16.) Claimant maintained that he received a written attendance warning on February 23, 2020, consistent with a seventh absence under

4

the policy, and that Employer could not issue both a written warning and a suspension for the same absence. (*Id.*)

In response to Claimant's testimony, Basham testified that Claimant could have called Employer's main telephone line and been connected to a "guard shack," where, at any time, employees could request to speak to a supervisor whom Claimant could have told about his absence. (*Id.* at 17.) She emphasized that this was written on the attendance policy posted around Employer's workplace and that supervisors routinely advise employees that they are "always, always able to get in touch with somebody." (*Id.* at 17-18.) Claimant denied knowing of this aspect of the policy. (*Id.*)

Finally, Basham explained that Employer's progressive discipline policy is "not necessarily a point system" but simply begins progressive disciplinary steps (a verbal warning, written warning, and suspension/termination) once an employee reaches 6 absences in any 12-month period. (*Id.* at 19.) Basham then noted that Claimant had received a verbal warning in December 2019, and a written warning for absenteeism on February 11, 2020, such that his next absence (which occurred on February 23, 2020) would merit suspension and/or termination. (*Id.* at 19-21.) In response to Claimant's assertion that he received a second written warning on February 23, 2020, suggesting that he somehow remained at the warning stage as of that date, Basham explained that Claimant's immediate supervisor issued that warning, which is standard procedure because the supervisor does not have access to Claimant's personnel file and is not aware of the status of any progressive discipline. (*Id.* at 21-22.) Basham clarified that she later replaced the February 23, 2020 warning with a suspension notice in Claimant's personnel file

5

after determining that suspension was the appropriate progressive disciplinary step, pending the hearing to consider termination. (*Id.* at 22.)

Following the hearing, the Referee issued a decision, denying Claimant unemployment compensation benefits under Section 402(e) of the Law. (C.R., Item No. 11.) In so doing, the Referee made the following findings of fact:

1.    [C]laimant was last employed [by Employer] as a full-time furnace operator . . . from January 11, 2012[,] through his last day worked on February 22, 2020.

2.    [C]laimant was discharged [by Employer] for attendance issues.

3.    [E]mployer has a progressive disciplinary attendance policy and a call-off procedure, which requires an employee who will be late or absent to work to call his supervisor at least 1 hour prior to the start of his shift.

4.    [C]laimant was provided with a copy of the employee handbook upon hire, which contains . . . [E]mployer['s] policy/procedure.

5.    [E]mployer provided . . . [C]laimant with a verbal counseling notice on December 16, 2019[,] for attendance issues.

6.    On February 11, 2020, . . . [C]laimant received a written warning notice for attendance issues.

7.    On February 23, 2020, . . . [C]laimant arrived at 11:46 [p.m.] for his 10:45 [p.m.] shift, and he failed to follow [E]mployer's call[-]off procedure.

8.    [C]laimant's supervisor called him at approximately 11:20 [p.m.] on February 23, 2020[,] to ask him if/when he would be arriving to work, and . . . [C]laimant advised him he was having car troubles and would be to work as soon as possible.

9.    [E]mployer suspended . . . [C]laimant upon his arrival to work on February 23, 2020, and then . . . [C]laimant participated in a suspension meeting with . . . [E]mployer, which then prompted . . . [E]mployer to complete an investigation.

6

10. At the completion of the investigation on March 2, 2020, the decision was made by . . . [E]mployer to discharge . . . [C]laimant from employment for his ongoing attendance issues.

(C.R., Item No. 11 at 1-2.) The Referee, in affirming the Service Center's determination, concluded that Claimant was ineligible for benefits under Section 402(e) of the Law because Claimant engaged in willful misconduct. (*Id.* at 2.) The Referee reasoned that Claimant's unpermitted absence without good cause and his failure to notify Employer of that absence without good cause constituted willful misconduct. (*Id.*) Employer met its burden of establishing that Claimant was terminated for willful misconduct. (*Id.*)

Claimant appealed the Referee's decision to the Board, and the Board affirmed the Referee's decision. In so doing, the Board adopted and incorporated the Referee's findings of fact and conclusions of law, while adding the following additional finding of its own: "[C]laimant was aware of . . . [E]mployer's policy." (C.R., Item No. 13.) Further, the Board clarified the Referee's decision by explicitly resolving all conflicts in the testimony in favor of Employer. (*Id.*)

On appeal to this Court,[3] Claimant essentially argues that the Board's findings of fact concerning his violation of Employer's attendance and call-off policies are not supported by substantial evidence.[4] Although Claimant does not identify

_____

[3] This Court's standard of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. 2 Pa. C.S. § 704.

[4] In addition to his substantial evidence challenge, Claimant asserts in his brief on appeal that he and Employer entered into a settlement agreement concerning a grievance Claimant filed for wrongful termination, in which Employer "agreed to pay unemployment compensation." (Claimant's Br. at 7.) The certified record contains no information concerning the alleged agreement, so we cannot consider this assertion. *Hamm v. Unemployment Comp. Bd. of Rev.*, 465 A.2d 716, 718 (Pa. Cmwlth. 1983). Moreover, a private agreement between Claimant and Employer is not relevant to Claimant's eligibility for benefits under the Law. *Welsh v.*

7

specific findings of fact in his challenge, his argument implicates findings of fact numbers 3, 7, and 10. Specifically, Claimant first asserts that Basham's testimony, which he characterizes as "false," does not support the finding that Employer had a progressive discipline policy and that Claimant violated that policy. He appears to challenge Basham's testimony that he had accumulated sufficient attendance infractions to warrant suspension and/or termination. Second, Claimant contends that he did not violate Employer's call-off policy but rather complied with the policy by (1) accepting his supervisor's call shortly after his shift began, and (2) arriving for his shift less than one hour after it began.

In response to Claimant's first contention, the Board argues that it resolved any conflict in the testimony of Basham and Claimant regarding Claimant's status under the progressive discipline policy in favor of Employer, and that Basham's testimony is substantial evidence to support the findings concerning the progressive discipline policy and Claimant's status thereunder. Regarding Claimant's second argument, *i.e.*, that he complied with Employer's call-off policy, the Board first argues that Claimant waived this issue by failing to raise it before the Board. The Board further argues that both Basham's and Claimant's testimony supports the finding that Claimant violated the call-off policy.

Substantial evidence is defined as "relevant evidence upon which a reasonable mind could base a conclusion." *Johnson v. Unemployment Comp. Bd. of Rev.*, 502 A.2d 738, 740 (Pa. Cmwlth. 1986). In determining whether there is substantial evidence to support the Board's findings, this Court must examine the testimony in

_____

*Unemployment Comp. Bd. of Rev.*, 402 A.2d 1154, 1155 (Pa. Cmwlth. 1979). "An employer and employee . . . cannot determine the employee's entitlement to benefits by subsequent agreement which is contrary to a Board determination . . . ." *Sill-Hopkins v. Unemployment Comp. Bd. of Rev.*, 563 A.2d 1288, 1289 (Pa. Cmwlth. 1989). Accordingly, we do not consider this argument further.

8

the light most favorable to the prevailing party, giving that party the benefit of any inferences that can logically and reasonably be drawn from the evidence. *Id.* The Board's findings of fact "are conclusive on appeal only so long as the record, taken as a whole, contains substantial evidence to support" them. *Penflex, Inc. v. Bryson*, 485 A.2d 359, 365 (Pa. 1984).

In an unemployment compensation case, the Board is the ultimate factfinder and is, therefore, entitled to make its own determinations as to witness credibility and evidentiary weight. *Peak v. Unemployment Comp. Bd. of Rev.*, 501 A.2d 1383, 1386 (Pa. 1985). The Board is also empowered to resolve conflicts in the evidence. *DeRiggi v. Unemployment Comp. Bd. of Rev.*, 856 A.2d 253, 255 (Pa. Cmwlth. 2004). "The fact that [a party] may have produced witnesses who gave a different version of the events, or that [the party] might view the testimony differently than the Board, is not grounds for reversal if substantial evidence supports the Board's findings." *Tapco, Inc. v. Unemployment Comp. Bd. of Rev.*, 650 A.2d 1106, 1108-09 (Pa. Cmwlth. 1994). Similarly, even if evidence exists in the record that could support a contrary conclusion, it does not follow that the findings of fact are not supported by substantial evidence. *Johnson v. Unemployment Comp. Bd. of Rev.*, 504 A.2d 989, 990 (Pa. Cmwlth. 1986).

Here, Basham testified that Employer's progressive discipline policy begins with a verbal warning once an employee accrues 6 absences in a 12-month period, or 3 absences in a 6-month period, and then progresses to a written warning and, finally, to suspension and/or termination with each succeeding absence. (C.R., Item No. 10 at 19.) She also explained that this policy is not a simple point-based system, but that the steps of progressive discipline begin once an employee accumulates 6 absences in 12 months. (*Id.*) This testimony is consistent with the

9

written attendance policy Employer submitted to the Service Center. (*See* C.R., Item No. 3 at 12.) Claimant and Basham provided conflicting testimony regarding Claimant's status under the policy, with Basham testifying that Claimant accumulated sufficient absences to warrant termination and Claimant disputing this. (*See* C.R., Item No. 10 at 16, 21-22.) The Board resolved this conflict in favor of Employer, however, and Basham's testimony, which the Board credited over Claimant's, supports the Board's findings of fact numbers 3 and 10 concerning the progressive discipline policy and Claimant's termination thereunder.

Concerning the issue of whether Claimant in fact complied with Employer's call-off policy by speaking to his supervisor and arriving for his shift at 11:46 p.m. on February 23, 2020, we note that Claimant did not raise this issue in his appeal to the Board. (*See* C.R., Item No. 12 at 5.) Accordingly, we agree with the Board that Claimant waived this issue. *See Crabbe v. Unemployment Comp. Bd. of Rev.*, 179 A.3d 1183, 1189 (Pa. Cmwlth. 2018) (holding issues not raised in claimant's appeal to Board are waived for purposes of appellate review). Even if Claimant had not waived the issue, we would conclude that substantial evidence exists to support finding of fact number 7, *i.e.*, that Claimant violated Employer's call-off policy. Claimant himself testified that he never called to inform Employer that he would be late or absent from his shift on February 23, 2020, but that Employer's supervisor called Claimant instead, shortly after his shift began. (C.R., Item No. 10 at 11-12.) Moreover, Claimant admitted that his shift began at 10:45 p.m., that he did not arrive until more than one hour later (at 11:46 p.m.), and that he did not contact Employer at all during that time period, apart from answering the call from his supervisor. (*Id.* at 13-14, 18-19.) At a minimum, Employer's call-off policy required Claimant to notify Employer once he realized he would not arrive at work on time. The

Board's finding that Claimant did not do so is supported by substantial evidence, including Claimant's own testimony.[5]

For the foregoing reasons, we affirm the order of the Board.

_____
P. KEVIN BROBSON, President Judge

---

[5] In his brief, Claimant does not argue that the Board committed an error of law in determining that his violation of Employer's attendance policies constituted willful misconduct. Accordingly, that issue is not before us. *Van Duser v. Unemployment Comp. Bd. of Rev.*, 642 A.2d 544, 548 n.3 (Pa. Cmwlth. 1994); *Coraluzzi v. Cmwlth.*, 524 A.2d 540, 540 (Pa. Cmwlth. 1987). We note in passing, however, that violation of a work rule, such as the attendance or call-off policies at issue here, can rise to the level of willful misconduct if the employer establishes the rule's existence, its reasonableness, and that the employee was aware of the rule when he violated it. *Brown v. Unemployment Comp. Bd. of Rev.*, 49 A.3d 933, 937 (Pa. Cmwlth. 2012). Once the employer makes this showing, the burden shifts to the employee to either rebut it or to show that the employee had good cause for his conduct. *Jordan v. Unemployment Comp. Bd. of Rev.*, 684 A.2d 1096, 1099 (Pa. Cmwlth. 1996). As we have discussed, the Board's finding that Claimant violated Employer's attendance and call-off policies is supported by substantial evidence. This finding, in turn, supports the Board's determination of willful misconduct. Further, Claimant did not claim, either below or on appeal, good cause for his actions.

11

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Trevor Losinger,            :
            Petitioner      :
                           :
        v.                  :    No. 953 C.D. 2020
                           :
Unemployment Compensation    :
Board of Review,                :
            Respondent    :

# **O R D E R**

AND NOW, this 2nd day of July, 2021, the order of the Unemployment Compensation Board of Review is AFFIRMED.

_____
P. KEVIN BROBSON, President Judge
